We'll hear argument first this morning in Case 10-1491, Kiobel v. Royal Dutch Petroleum. Mr. Hoffman. Mr. Chief Justice, and may it please the Court, the principal issue before this Court is the narrow issue of whether a corporation can ever be held liable for violating fundamental human rights norms under the Alien Tort Statute. Under Respondent's view, even if these corporations had jointly operated torture centers with the military dictatorship in Nigeria to detain, torture, and kill all opponents of Shell's operations in Ogoni, the victims would have no claim. But, Counsel, for me the case turns in large part on this. Page 17 of the red brief says, International law does not recognize corporate responsibility for the alleged offenses here. And one of the amicus briefs for Chevron saying, No other nation in the world permits its court to exercise universal civil jurisdiction over alleged extraterritorial human rights abuses to which the nation has no connection. And in reading through the briefs, I was trying to find the best authority you have to refute that proposition. Or are you going to say that that proposition is irrelevant? Well, there are a couple of questions within that. It involves your whole argument, of course. It does, yes. And let me start by saying that the international human rights norms that are at the basis of this case for the plaintiffs, crimes against humanity, torture, prolonged arbitrary detention, and extrajudicial executions, all of those human rights norms are defined by actions. They're not defined by whether the perpetrator is a human being or a corporation or another kind of entity. And so I think that the Respondents are wrong when they say that international law does not extend to those kinds of acts. It does. And the United States agrees with that position. What they have tried to conflate is the question about whether international law, the international law norms apply to a corporation or a person, with whether there's an international consensus with respect to how those norms should be enforced, particularly within domestic civil jurisdiction as opposed to criminal jurisdiction. But in the area of international criminal law, which is just analogous, I recognize, there is a distinction made between individuals and corporations. Well, there's a distinction made within the jurisdiction of certain modern international criminal tribunals. And Respondents take their position too far on this because what they've said is that the fact that corporations can't be found liable criminally under the International Criminal Court, for example, means that the norms, the underlying norms, genocide, crimes against humanity and war crimes when it comes to the International Criminal Court don't apply to corporations. And that clearly is wrong because the United Kingdom and Netherlands, for example, the two home countries of these corporations, has passed domestic implementing legislation that imposes criminal penalties for violations of those very norms. So there's no question that it can be done. What the most important — I think one of the most important principles in this case is that international law, from the time of the Founders to today, uses domestic tribunals, domestic courts and domestic legislation as the primary engines to enforce international law. You do begin by the law. Ginsburg. Mr. Hoffman, I thought that Justice Kennedy asked you, is there another nation that has a counterpart to 1350 that imposes civil liability on corporations for violations of customary international law where the conduct occurred abroad, the harmed person is abroad, and the defendant is not a U.S. resident? Well, the — there are two parts to my answer to that. One is that the Alien Tort Statute is a unique way of enforcing the law of nations in terms of the way that the Founders married tort law and violations of the law of nations. In the International Human Rights amicus brief, the amicus brief of international human rights organizations, at pages 18 to 22, there's a whole series of cases where the domestic courts and domestic legislation of various States around the world have addressed those kinds of issues. And so there isn't an exact analog to the Alien Tort Statute, but there's no question that domestic legislation and domestic courts have taken on these kinds of issues. Well, there's no particular connection between the events here and the United States. So I think the question is whether there's any other country in the world where these plaintiffs could have brought these claims against the Respondents. Well, let me address the extra — I think it comes under the general rubric of extraterritoriality. Is there a yes or no answer to that question or not? I believe that they — that the answer to that would be yes. Where? I think that they could be brought in Holland or the United Kingdom for events in Nigeria. I think that the cases that are discussed at those — Any other country other than the country of the citizenship of the defendants? I don't know if this precise case could be brought. I know that the — we have a principle of transitory torts. And so one of — and I believe other countries have that principle as well. So in terms of the underlying tort action, we have plaintiffs who are U.S. residents and were U.S. residents when they filed this case. They found a tortfeasor within the United States that they believed was responsible for these torts. And from Mostyn v. Fabregas and before, Mostyn v. Fabregas being the 1774 case by Lloyd Mansfield talking about transitory torts, the courts clearly have the jurisdiction to adjudicate those kinds of court claims. If there is no other country where this suit could have been brought, regardless of what American domestic law provides, isn't it a legitimate concern that allowing the suit itself contravenes international law? Well, that issue has been raised in a number of the briefs. I would say two things. One is that that doesn't really go to the question about whether corporations can be categorically excluded from alien tort statute coverage, which is really the issue that was decided by the Court below and which was the question presented here. Extraterritoriality has to do with a different kind of issue. I would argue that, I mean, we've obviously argued that that's an issue that ought to be briefed on its own. But there is no international law principle that I am aware of, and I think it would need to be proved, that says that the United States Congress was disempowered at its founding from providing these kinds of tort remedies. And it was clear from the founding that the founders at least believed that this statute would be extraterritorial. But it was motivated, I gather, by assaults on ambassadors here within the United States. Well, it was motivated by the Marbois incident and a similar incident to the regard to a Dutch ambassador in New York at the time of the Constitutional Convention. But if the Court looked to the Bradford incident, the incident about which Attorney General Bradford expressed his opinion in 1795, which was an opinion that this Court found very important in terms of interpreting the Alien Tort Statute, the Bradford opinion had to do with an assault on the British colony in Sierra Leone. And so it was not only extraterritorial in the sense of piracy, and I think everybody agrees that this statute was intended to deal with piracy and maritime-related violations of the law of nations. It was that the Bradford opinion there said, even though U.S. criminal jurisdiction was limited, the civil jurisdiction under the Alien Tort Statute provided that the corporation whose property was attacked within the territory of Sierra Leone. Alito, have all the judges who have interpreted that opinion interpreted it the way you just did? The Bradford opinion? Yes. I'm not sure in which sense. I mean, yes, I think that the Bradford opinion has been used. Alito, how did Judge Kavanaugh interpret that on the D.C. Circuit? Well, I think I don't recall specifically. I know that there's been some controversy about whether that was an attack in the high seas. I know there's some scholarship about that. What I would suggest to the Court, if the Court went back to the original documents that were sent to Attorney General Bradford, which is from the British Government, I think the Court would find that this attack actually took place in the territory of Sierra Leone. And so one of the reasons that we've suggested that the extraterritoriality issue deserves full treatment if the Court is troubled by it in a case where there is full briefing, because in this case it was raised by the Respondents' amici largely, although the Respondents have raised it. And the historians that have expressed opinions on corporate liability and others that would be interested in this question have not been able to put the other side before the Court. And I think there's a very important point. The first sentence in your brief and the statement of the case is really striking. This case was filed by 12 Nigerian plaintiffs who alleged that Respondents aided and abetted the human rights violations committed against them by the Abacha dictatorship in Nigeria between 1992 and 1995. What does a case like that – what business does a case like that have in the courts of the United States? There's no connection to the United States whatsoever. The Alien Torch statute was enacted. It seems to be – there seems to be a consensus to prevent the United States to prevent international tension, to prevent – and does this kind of a lawsuit only creates international tension? Well, the Alien – if I could start with the second part first. The Alien Torch statute certainly was passed to do that, but also as an expression of the nation's commitment to international law. I think primarily as a statement of this country's commitment to international law as a new member of the community of nations. And if you look at the incidents like the Marbois incident – Do you really think that the First Congress wanted victims of the French Revolution to be able to sue in the court – to sue French defendants in the courts of the United States? I think that what – I think the question would have been, is there a law of nations violation? For example, in the Marbois incident, say the Marbois was attacked by longchamps outside the United States, but longchamps came to take refuge in the United States and the French government said, you have somebody living in your country that has attacked our ambassador in violation of the law of nations. I think the United States – I think the same principle – the United States would have wanted to do something for the French government in response to that because it would have been giving refuge to someone who had violated the law of nations. And the same principle has been applied in the modern era to giving no safe haven to torturers and others. That sounds very much like Philatelga, and I thought that Sosa accepted that Philatelga would be a viable action under the Tort Claims Act. So I thought what we were talking about today, the question was, is it only individual defendants or are corporate defendants also liable? I think the question was, is it only individual defendants or are corporate defendants also liable? A lot of the extra-territoriality issues would apply to the cases that this Court endorsed in Sosa. Kennedy, but I agree that we can assume that Philatelga is a binding and important precedent, the Second Circuit. But in that case, the only place they could sue was in the United States. He was an individual. He was walking down the streets of New York and the victim saw him walking down the streets of New York and bought the suit. In this case, the corporations have residences and presence in many other countries where they have much more, many more contacts than here. And those issues, generally speaking, are resolved by other doctrines rather than an exclusion of corporations categorically from the statute. But can I go back to the, are you finished with that answer, because I want you to finish. The only thing I was going to add to that is that a doctrine like forum nonconvenience or personal jurisdiction would deal with the issues about whether this is the most appropriate forum. And those doctrines apply whether it's an alien tort statute case or it's a common law tort case. These plaintiffs could bring this case in State court. What the alien tort statute does is provide a Federal forum when these torts are in violation of the law of nations. And that's really what the Founders intended and what it does. I'm sorry. Breyer. I just want some clarification on the first question that Justice Kennedy asked. Oh, well. I'll get it in reading about it. You go ahead. You want to reserve your time. I can find the answer to what I was going to ask. If there aren't any further questions right now, I'd reserve the balance of my time. Thank you, Mr. Hoffman. Mr. Kneedler. Mr. Chief Justice, and may it please the Court. The court of appeals erred in its categorical ruling that a corporation may never be held liable under the alien tort statute, regardless of the nature of the norm, the locus of the wrong, or the involvement of the State. Sotomayor, could you explain to me the difference between Respondent superior liability and corporate liability? In the briefs, there seems to be an assumption that Respondent superior liability is permissible, and the only issue is whether corporate liability is. Is there a difference between the two doctrines? Well, I think the difference is really a matter of degree. I mean, under Respondent superior liability, a corporation is normally responsible, liable for the acts of its agents. Judge Posner in the Seventh Circuit Fleming decision suggested that in the nature of this category of cases, assuming that the ATS would allow a common law cause of action for conduct in another country, that maybe there should be more limited Respondent superior principles, because the action would occur in circumstances where the corporation sought to be held liable may not have much control over it. Where the corporation itself is liable, and this would be true in criminal law and presumably in tort law, would usually require some action by those responsible for running the corporation or high enough up the chain of command. Kagan. I'll ask. Kagan. Excuse me. When you say in your brief that we should look at this as a remedial question, as a question of enforcement, do you say that because you're thinking of this as a vicarious liability case? In other words, there's an individual person who clearly has violated a norm of international law and then the question of whether to hold the corporation liable is an enforcement question? Or would you say that it's also an enforcement question when we're talking about direct corporate liability? I think it's both, particularly the latter, but I think the former as well. As Mr. Hoffman said, international law norms prescribe certain conduct, but the enforcement of that is left to each nation. Scalia. Well, but I find it difficult to understand why we would not hold foreign sovereigns liable under this Act, that they're excluded despite its language, and yet we cannot inquire whether persons other than sovereigns are covered. What is the distinction between the two? Well, with respect to sovereigns, a sovereign could not be held liable for, at least for conduct outside the United States because of the Foreign Sovereign Immunities Act. That's what this Court held in the Amarada-Hess case. Within the United States, if the foreign sovereign committed a tort, the Foreign Sovereign Immunities Act, subject to certain limitations, would allow it. But this is more specific than the Foreign Sovereign Immunities Act. It deals with a much more narrow category of case, and I do not think that the Foreign Sovereign Immunities Act would be interpreted to eliminate the sovereign's liability, if indeed this statute provided for it. Well, the Court in Amarada-Hess did hold that, that it made an important point. It made a point that is important to this case as well. It said that while the alien tort statute identifies who the plaintiff must be, the plaintiff must be an alien, it does not identify who the defendant may be, and that if there are limitations on who the defendant may be from other sources of law and foreign sovereign immunity would be one of them, then the suit could not go forward against the foreign sovereign. But, Mr. Kneedler, in SOSA, and this is footnote 20, we said that the question of whether you were a State actor or not a State actor might be relevant to the question of whether there was a substantive norm that applied to you. And I guess the question here is why that same analysis doesn't apply to the question of whether there is corporate liability. In other words, is there a substantive norm that applied to corporations? Maybe there is, maybe there isn't. But that that's the question, as opposed to what you suggest in your brief, that really we should just think of this as a question of enforcement, which is entirely up to Federal common law. And I guess the question is, why think of it as enforcement rather than as a substantive obligation? Kneedler, Well, first looking at footnote 20 in SOSA, what the footnote says, that a related consideration, meaning related to whether the particular norm satisfies the criteria in SOSA, is whether international law extends the scope of liability for a violation of a given norm to the perpetrator being sued if the defendant is a private actor, such as a corporate or individual. Kagan No, I'm not saying footnote 20 addressed a different question, but it's an analogous question. If the question of whether non-State actors are part of the substantive obligation question, why, too, isn't the question of whether international law extends to corporations? Kneedler, Because the State actor aspect of it goes to the question of the conduct. Does the conduct itself violate the norm? I think it's an – but beyond that, it's enforcement. I think it's important to bear in mind that the Alien Tort Statute uses the word tort. And at the time it was enacted. Scalia I didn't understand the point you just made. That the sovereign immunity part goes to the conduct? Kneedler, Well, it goes to whether the defendant can be sued. The sovereign immunity does. Scalia Why doesn't the corporate thing go to precisely the same place? Kneedler, Because there is no independent prohibition in international law or domestic law against suing a corporation the way there is for a foreign sovereign. To the contrary. Scalia But whether – I'm sorry, I want to. Kneedler, No, I was just going to say to the contrary, at the time the Alien Tort Statute was adopted, corporations could be held liable. This Court's decision in Chandler recently surveyed the law, and corporations could be held liable in tort. Roberts, Under international law, it is critically pertinent who's undertaking the conduct that is alleged to violate international norms. If an individual, a private group seizes a ship, it's piracy. If the Navy does it, it's not. Governmental torture violates international norms. Private conduct does not. So why doesn't the – why isn't the same pertinence? Your argument seems to be that all you need to do is find an event, torture, piracy, whatever, and then it's up to the domestic law whether or not particular entities can be sued. Kneedler, I think that's correct. Roberts, As a statement of your position. Kneedler, Yes. But it doesn't work when you're talking about State, whether it's the State conducting the illegal conduct or somebody else. So why – that's not up to the domestic. No, because that goes to the definition of the norm. But if we take the Alien Tort Statute, in 1907, the Attorney General concluded that an irrigation company could be sued for violating a treaty. If we take the examples that gave rise to the Alien Tort Statute, if a process of serving a company, if one of its agents went into an ambassador's house and tried to serve process, that was a criminal violation at the time. Kennedy, But you go much further. Suppose an American corporation commits human trafficking with U.S. citizens in the United States. Under your view, the U.S. corporation could be sued in any country in the world and it would – and that would have no international consequences. We don't look to the international consequences at all. That's the view of the government of the United States, as I understand. The question of extraterritorial application is distinct from the question of whether a corporation can be held liable. So why, then, you want to answer in your brief and everywhere, this question I find impossibly difficult, may be highly fact-dependent. There is no United States Supreme Court of the world, there is no way of getting a unified law on the points of whether, when we interpret a common law, Federal – a system of Federal common law to decide whether a corporation can be defendant in a certain kind of case, every other country could do the same, and there is no way of resolving it. All right? So I find that a difficult question. I don't know why that's in this case. I would have thought the question in this case is, can a private actor be sued for certain violations of substantive criminal law? The answer is yes. Okay? Genocide, for example. And then the question is, a corporation is a private actor, and is there any reason why, just like any other private actor, a corporation couldn't be sued for genocide? And there the answer is, I don't know, but I'll find out when the other side argues. You see? So I think this is unnecessarily complicated. They made a categorical rule. They said never sue a corporation. I seem to think possibly of counterexamples, Pirates, Incorporated. You know, I mean, so why isn't that – why are we going into – I mean, you have good reason for doing it, and I want to hear why. Well, no, our position is straightforward, just as you said. The question of whether a corporation can be held liable, we think, should be based on the fact that the ATS refers to torts. And in applying this question, we think, is not complicated. In fashioning Federal common law to decide whether there should be a common law cause of action, the ATS's reference to tort law, I think, directs the Court to domestic tort law and the question of whether a corporation can be held liable under domestic tort law, and it clearly can be. It could be at the time the statute was enacted, and it can be today. Thank you, Mr. Kneedler. Ms. Sullivan. Mr. Chief Justice, and may it please the Court, I'd like to begin with the answer to Justice Kennedy's first question. Justice Kennedy asked, and Justice Breyer renewed the question, is there any source in customary international law throughout the world that holds corporations liable for the human rights offenses alleged here? And the answer is there is none. Breyer, you say there is not a case. That's a different matter. Not a case. Yes, but that's a different matter, because you can have a principle that applies even though there isn't a case, and the principle that here would apply is what I said, Pirates Incorporated. Do you think in the 18th century, if they brought Pirates Incorporated and we get all their gold and Blackbeard gets up and he says, oh, it isn't me, it's the corporation, do you think that they would have then said, oh, I see, it's a corporation, good-bye, go home? Justice Breyer, yes, the corporation would not be liable. The corporation would not be liable. What source have you for that proposition? The look to justice story in U.S. against Smith cited in the Respondent's brief at footnote 12, it looks to piracy, and piracy is allowed in ram matches. You could seize the ship with which the piracy was committed, as you could later slave-trading ships, but you could not seize another ship and you could not seize the assets of the corporation. So pirating. You couldn't seize another person other than Blackbeard. That's why, if the ship is owned by a corporation and they sue the corporation in 1817, whatever it was, 96 or something, what reason do we have to think that the corporation would have lost, I mean, would have won? Your Honor, let's be clear that Sosa referred to specific norms. So the answer to Pirates, Inc. does not determine the answer in this case, which is about whether corporations can commit post-Nuremberg human rights offenses. A given norm must be applicable to a corporation. So even if I gave you Pirates, Inc., it wouldn't decide this case. But in fact, Pirates, Inc. was not suable. It was the ship that could be seized. But to answer Your Honor's question about the Genocide Convention, and perhaps I could go back, I want to be very clear. We're not arguing there needs to be an international adjudicated case finding a corporation liable in order for Petitioners to win, but they have failed to show anything in the conventions, the nonbinding treaties engaged in by multiple nations, they have failed to show anything in customer practice, they've failed to do that. But Ms. Sullivan, I think that that's mostly because all of these are written to prohibit certain acts and they don't talk about the actors, so if I could, you know, draw an analogy, as if somebody came and said, you know, this norm of international law does not apply to Norwegians. And you say, well, there's no case about Norwegians, and it doesn't specifically say Norwegians, but of course it applies to Norwegians, because it prevents everybody from committing a certain kind of act. Sullivan. But, Justice Kagan, international law does speak to who may be liable, which you correctly identified as a substantive question, not a question of enforcement. And international law holds corporations liable for some international law violations. Look to the Convention on the Suppression of the Financing of Terrorism, which speaks about legal entities, or the Convention on Bribery of Public Officials, which speaks about legal persons. But the human rights offenses here do not arise from conventions like those, which allow corporate liability. To the contrary, the human rights offenses here arise from conventions that speak to individual liability, the liability of individuals. And, Justice Breyer, in precise answer to your question about the Convention on Genocide, if you look to the Chevron brief on page 20, this is the amicus brief of Chevron filed by Professor Goldsmith. On page 20, it quotes in full the relevant passage from the Genocide Convention Article IV. I'm sorry, there are many briefs, but perhaps if I could read it to Your Honors, I'll read it in full. It says that persons committing genocide or any of the other acts enumerated in Article III shall be punished whether they are constitutionally responsible rulers, public officials, or private individuals. And, Justice Kagan, all the other relevant conventions also speak about natural persons. The Convention Against Torture speaks about him, not it. And when Congress, in the one time it implemented the conventions that are the source of the human rights offenses that are alleged here, Congress, in the Torture Victim Protection Act, said that the suit may be brought against individuals, and it expressly declined to use the term persons, which could embrace corporations. And we've Roberts. You're getting ahead of yourself. We haven't decided that question just yet. But this statute doesn't use the word individual, and it doesn't use the word person. And as far as a corporate entity is concerned, a corporation could sue, could be a plaintiff under the Alien Tort Statute, could it not? There's no? Justice Ginsburg, a corporation could sue if it were an alien and if you decided alien embraced corporations. And, of course, the Attorney General Bradford opinion from 1795, which I agree with the Chief Justice extended and with Justice Alito, did not extend to conduct in other countries. It extended only to conduct on the high seas. But Bradford, the Bradford opinion if you give it any credit only establishes that a corporation may be a plaintiff. It does not speak to the question here, which is whether a corporation may be a defendant. Sotomayor, Ms. Sullivan, take an example that has all the extraterritoriality aspects of this case removed from it. Let's assume that the French ambassador is assaulted or attacked in some way in the United States, and that that attack is by a corporate agent. Would we say that the corporation there cannot be sued under the Alien Tort Statute? Sullivan, Yes, Your Honor. You would say that because there is no assaulting ambassador norm that applies to corporations. I just want to go back and look at the slavery. Kagan We would have to sue the person individually. Sullivan, Exactly, exactly. Kagan So this goes back to Justice Breyer's question. Where do you find that in international law? Where does it say when the French ambassador is sued in the United States by a corporate agent, we can't sue the corporation? Sullivan, The burden rests on the Petitioners to show that the norm is established by international law, not on us to show that corporate liability is extra. Scalia, Congress could pass a statute to that effect. Sullivan, But absolutely. Congress tomorrow, Justice Scalia. Scalia, The issue is whether this did it or not. Sullivan, This did not. And what international law has not established, not just through cases, Justice Breyer, but through any source, convention or custom, if you look to the jurisdictional statutes of the ICC, the run of statute, the ICC. Kagan You don't contest. Of course one could bring an ATS suit against the individual, is that right? Sullivan, Yes, Your Honor. Kagan Now, all of the United States law and mostly other countries' law would hold the corporation liable for the Individuals Act, isn't that right? That's a general principle of law. Justice Kagan, let's be clear to separate two very different causes of action. There is no country, and to answer Justice Ginsburg's first question, there is no country in the world that provides a civil cause of action against a corporation under their domestic law for a violation of the law of nations. In Mr. Hoffman's hypothetical, if there were a suit in England or in the Netherlands, it would be for assault and battery, wrongful death, or a law violation. In the United States, there is no country that provides a civil cause of action  And there is no country in the world that provides a civil cause of action against an individual as well. The ATS is just a unique statute. It's unique against individuals, and it's unique against corporations. That doesn't answer the question that you are here to address, which is whether corporations are meaningfully different from individuals. They are meaningfully different from individuals under international law, which is the crucial choice of law question you need to answer here. The crucial question that's at the threshold is which law determines whether corporations are liable. Breyer, you're right on that point. What about slavery? Genocide, I see your point in the Goldsmith brief. But what about slavery? That seems like contrary to international law norms, basic law norms, it could be committed by an individual. And why, if it could be committed by an individual, could it not also be committed by a corporation in violation of an international norm? Let me be clear. The question is not could. No, no. I know, but the way the reason why, as you point out in your briefs, the corporations are different in many countries is that they are not moral persons. And I have in my mind filled in the blanks on that, and I think I know what it refers to. All right. That's the rationale that kept them out of some of these treaties. And now the question would be, all right, are they always kept out no matter what? And I'm bringing up the two counter-examples I think were fairly strong was Pirates Inc., but that's a joke example, and the other, though it's a point, and the other is slavery. What about that one? Corporate liability, even for norms on which the international community agrees, torture, genocide, piracy, slavery, corporate liability is a substantive norm that is established by international law. And the nations of the world, for various reasons, have treated individuals and corporations differently. And, Justice Kennedy, over and over and over again, as not just the Respondent's brief at page 17, but the U.K.-Netherlands brief, two of our most important allies filed a brief in support of Respondent saying at pages 11 through 15, there is no international norm applicable to corporations for violations of the human rights offenses here. Now, the international community has many reasons for this. In 1998, when the Rome Statute established the ICC, the signatories actually discussed whether to have criminal liability for corporations, and as the Schaeffer amicus brief in support of Petitioners points out at page 18, they actually also discussed whether to have criminal liability for corporations. And the nations of the world who created the ICC, one of the most important modern instruments for bringing about human rights prosecutions, declined to embrace jurisdiction over corporations. Kennedy. Can you tell me why you think they did that? I mean, for us, the Respondent-Superior is so simple. Why is it a big deal in the international world? Well, Justice Kennedy, there's many reasons. For one, a corporation involves many innocent stakeholders beyond the perpetrators. And the regime established at Nuremberg, if it established nothing else, established that it is individuals who are liable for human rights offenses, it pierced the notion of hiding behind a State abstract entity and it held individuals, including individual businessmen, from Alfred Krupp to 28 officials indicted from the I.G. Farben firm. But Nuremberg was about individual liability. What happened to I.G. Farben? I thought that it was dissolved and its assets taken. Yes, Justice Ginsburg. I.G. Farben was dissolved by the Control Council, Law No. 9, in 1945. It was a political act. It preceded any of the tribunals, either international or national. It was not until later that year that the International Military Tribunal began. It prosecuted no corporations. When the Allies prosecuted perpetrators of the Nazi horrors in later cases, they prosecuted, again, only individual officers, not any corporations. There are two amicus briefs on the Nuremberg history, one in support of Petitioners filed by Jennifer Green and one in support of neither party filed by Jonathan Massey. Both of them agree on one proposition, and that is that no corporation was prosecuted by either the International Military Tribunal in 1945 and 1946, nor in any of the subsequent U.S. tribunals. In fact, U.S. prisons were prosecuted. But there was no civil liability adjudicated in Nuremberg. It was about criminal. That's correct, Your Honor. And to answer your question, when I.G. Farben was dissolved, it was part of denazification, decartelization, and a destruction of the Nazi war machine, of which I.G. Farben was an integral part. It was practically viewed as an enemy state in and of itself. That is a precedent. So the President of Nuremberg, like the President of the ICTY, the ICTR, the ICC, all exclude liability for corporations, even for the most heinous offenses of the modern era. They focus liability rather on corporate officers. And, Justice Kagan, we don't dispute that corporate officers can be held to account for these offenses, assuming, Justice Alito, that we don't have concerns about extraterritoriality even as to individuals. Well, I think that's true. Let me just take you back to this question of separating out direct corporate liability from vicarious corporate liability. Because it's clear. One question is, is there a substantive international law obligation? But there's another question, which would not be an international law question, which is a remedial question. Remedies are addressed by common law, rather, American common law, rather than by international law. So why shouldn't we look at the vicarious liability question as essentially a question about the scope of the appropriate remedy once an international law violation has been found? Justice Kagan, you should look at questions of corporate liability, like questions of aiding and abetting liability, like questions of individual private liability as opposed to State actor liability. You should look at all of those questions as substantive questions answered by international law. And that's because footnote 20 of SOSA says you look to whether international law extends liability to the perpetrator being sued. You can't just find an act out there and fan out to anyone in the entire world, including consumers pumping gas in Ohio, and say there's been an act of international law violation. But the question of who can be sued is a remedial question. It's not. The question of who has an obligation is a substantive question. Respectfully, Justice Kagan, we disagree. The question of who may be sued is fundamentally part of the question of whether there has been a tort committed in violation of the law of nations. It would read the verb committed out of the statute. If you just said find a violation of the law of nations anywhere and then apply it to whoever you want. But in my example, the tort in violation of the law of nations has been committed. It's been committed by the corporate agent. And the question then is can one hold the corporation responsible for that tort? And that seems to be a question of enforcement, of remedy, not of substantive international law. Justice Kagan, we respectfully disagree. That is a question of substantive law. Think about a domestic analogy. Look to the restatement of conflicts. You would ask whether you would not look to forum law to determine a question of respondeat superior or contribution or indemnity. You would not look to forum law to determine whether, in the words of the restatement, one person is liable for the tort of the other. You would look to the law of the place of misconduct or the place of where the corporation is headquartered. Forum law determines in this case whether you can have civil remedies rather than criminal. We concede that the ATS allows a civil remedy where the world would impose only criminal liability. That's because civil liability versus criminal liability, that's a matter of remedy. So would be the amount of damages. So would be the choice of compensatory or punitive damages. Those are matters of remedy for domestic law to decide. But not of the place where the corporation is headquartered. Well, suppose that has typical respondeat superior liability. It says corporations are liable for the acts of their agents. So, and most, if I'm correct me if I'm wrong, I think most countries in the world have such a notion that corporations are responsible for the acts of their agents. So how does looking to the law where the corporation is headquartered, where does that get you when that country has the very same law that we do that, yes, corporations are liable for the acts of their agents? Justice Ginsburg, respectfully, we don't think the world is all of one when it comes to issues of corporate responsibility for the acts of its agents. If you look at the ICJ, sorry, if you look at the Rome statute, the Rome statute itself has very particular sections about when a corporate superior is liable for the actions of a corporate inferior. It looks to a knowledge and deliberate indifference standard. Not every nation of the world agrees on what standard there must be for even attributing the agent's act at the bottom of the corporate hierarchy to a senior officer, much less to the corporation as an entity. In answer to your question about, earlier, about respondeat superior, Justice Kagan, the only way a corporation can do anything is through the acts of human beings. Thus, there's always the question when it comes to corporate liability to ask how to attribute the action of the human beings who work for the corporation to the corporation. And we respectfully submit that SOSA footnote 20 commits that question, as does the ATS itself, to international law. Kennedy, I wonder if you don't concede away too much when you say, well, there's a difference in substance and remedy and questions of jury trial damages and so forth. That's domestic. Those were the concerns that the U.K. and the Netherlands addressed in their brief saying why corporations shouldn't be liable for acts committed in foreign territory. That was the whole reasoning of the U.K. brief. Justice Kennedy, I agree completely. And let me be very clear on one thing. I've addressed so far only step one of SOSA, which is, does international law provide for a specific, universal and obligatory norm of corporate liability? It does not. In fact, it refutes it. The Rome statute rejected liability for corporations. The jurisdictional statutes of the ICTY and the ICTR apply jurisdiction only to natural persons. The international community at step one has rejected it. But, Justice Kennedy, it's very important that SOSA puts a second screen into your inquiry. You must ask at the second step, even if international law had provided any source of corporate liability, which it does not, you would still have to ask footnote 30 of SOSA says it's a higher bar. Should Federal common law, should Federal common law now embrace these kinds of actions? And the answer is no, even if you found this were a question of domestic remedy. We think you cannot. This is a question of substance. But even if this were a question of domestic remedy, you should not find liability for corporations for the same reasons you rejected corporate liability in Maleska. Ms. Sullivan, in SOSA, as I understand it, it's all about what is the conduct that falls under this law of nations. It is not about who is the actor subject to that law. SOSA is dealing with what kinds of conduct come within the Alien Tort Statute. It doesn't consider the question of what actor. That wasn't before the Court. What was before the Court is what kind of activity violates, is contrary to the law of nations. Justice Ginsburg, respectfully, we disagree, and so do all the courts of appeals who have addressed the question of aiding and abetting liability. Every court of appeals, save one, including the Ninth Circuit and the D.C. Circuit, which disagreed with us on the outcome, said that the question of whether international law permits liability for aiding and abetting is to be determined by international law. The second, the D.C. Circuit. Breyer, you could do that. First, maybe you address this case. There was a case called Skinner v. East India Company. Yes, Your Honor. That was under English tort law, 1666. Okay. All right. Now, what I'm thinking of is if you go through the rationales, you find some instances where individuals could, in fact, violate an international law norm, and then you find a lack of a reason why a corporation couldn't do the same. Now, in that kind of category, could the Court say we're interpreting Federal common law here to determine who can be sued under this statute? That's the remedial part. You may not. And so what we're saying is that there is a – in certain circumstances, there could be a suit against a corporation. You'd have to be careful because you recognize that by creating a suit against a corporation, you're saying every country in the world can do the same. And therefore, but maybe there are instances of, like, universal jurisdiction recognized under international law where you could be pretty certain no harm would be done by that. And so what I'm thinking of is a way of enforcing it. Justice Breyer, first, we disagree that the question of who may be sued is a question of enforcement. We think that bridge was crossed in Sosa. And as I was saying to Justice Ginsburg, in all the cases that hold, all the courts of appeals agree that who may be liable, just primary actors or also aiders and abettors, is determined by international law as a question of substance. So we disagree with the premise. But to answer Your Honor's question, the Federal common law still should not fly in the face of Congress. And I think the important question in your hypothetical is who is the you? As Justice Scalia just pointed out, Congress could amend the ATS tomorrow to provide for a Federal common — a Federal statutory cause of action against corporations. But the one time Congress spoke to the very question at issue here, it held the diametric opposite. Congress and the TVPA rejected corporate liability by choosing the term individuals rather than persons. And I realize, Mr. Chief Justice, that's the next case, but we think there's really the answer that the TVPA excludes corporations is compelled and the U.S. agrees. So, Your Honor, the question is not what should Federal courts do in the abstract. It's what should Federal courts do when there's exact statutory decision-making by the political branches that has gone the other way. In maritime law, in Miles v. Apex, you didn't — you didn't decide to go contrary to the Congress in the Jones Act. You said if there's a Jones Act statutory statement about wrongful death, we should follow it in Federal common law. Similarly here, even if the international community thought there was anything to corporate liability, which it doesn't, it disagrees. Our two allies, the U.K. and the Netherlands, disagree, and Germany's filed a brief saying it also disagrees with the ATS as it's been applied. Even if there was international consensus, you would still have to ask, should the Court do the opposite of what Congress did? Well, no, but the way to do it, I mean, in Skinner, even if it was English common law, the Court reasons, it says the taking of the ship on the high seas was odious and punishable by all laws of God and man. So we could — could you not say where an action is forbidden by the international law and it is punishable or by all laws of God and man? In such a circumstance, there being no reason to deny corporate liability here, even under the moral person rule, we interpret the Federal common law to permit that remedy. Well, Your Honor, the ATS has language that says the tort must be committed in violation of the law of nations. And so although, Justice Ginsburg, it doesn't specify who may be the defendants, it does point us to the law of nations to figure out what the law of nations thinks about who may be the defendants. And the law of nations is uniform. It rejects corporate liability. It rejects corporate liability. So to find a Federal common law cause of action here is to fly in the face of both the international community, with all the foreign policy consequences Justice Kennedy referred to earlier, if, as the Chief Justice said earlier, the point of the forum for the Marbois incidents, so that France wouldn't think it had to go to war on us to stop the offense to its sovereignty. But it will provoke war to go out ahead of the international community, foiling the purpose of the ATS. But also, and this is a misogynistic effect to it. Ginsburg, and has taken that into account. I mean, for you just representing the corporations to say what is in the interest of the United States when the United States representative has told us they think that individuals and corporations are both subject to suit? Well, Your Honor, respectfully, we accept that the United States here before you today doesn't speak to the foreign policy consequences of this kind of ATS liability. And we haven't even gotten to the alternative ground Justice Alito and the Chief Justice having Betsy Cannon says don't lightly construe your law to offend international law. But just back to the United States, I respectfully suggest you should look to the TVPA rather than simply to what the United States says here today. And the TVPA, which is Congress interpreting. But the TVPA is one limited statute dealing with one particular category of offense. And it was specifically meant to supplement, not to supplant, the ATS. So between those two things, the fact that it's limited to torture and that there was no design to supplant the ATS, I guess I think that if your best shot is the TVPA, that's a weak one. Well, it's one of many sources, Your Honor. Just to go back to the key point about international community, the international community, Justice Breyer says don't just look for adjudicated opinions, but every international tribunal excludes corporations. Look to the U.N. process. The Petitioners make a great deal out of a U.N. process that's taken place since 2007. We cite the U.N. special representative saying I have looked at the international human rights instruments that are out there, and I find no basis for corporate liability. That's the U.N., not Congress. You said the international community draws this line. And as far as I can see, the international sources are simply silent as to this question. So if I said to you, Ms. Sullivan, I want to go back and read the best thing you have, saying that the international law sources draw this line, what do I read? Sullivan. Read, first of all, the Rome Statute, 1998, and the legislative history of it. But the Rome Statute is different, because the Rome Statute is about criminal liability, and we know that the Rome Statute was meant to complement many, many international States' laws, which, in fact, do not hold corporations criminally liable domestically. Read, but the Rome Statute also rejected civil liability. That's in the Schaeffer brief, the Schaeffer-Meekers brief. He was our representative there, and he said civil liability was considered but rejected. So the Rome Statute rejected either corporate or criminal liability for corporations under the new ICC. The ICC, the ICTY, the Convention Against Torture itself. I thought they rejected civil liability for everyone. It wasn't limited to corporations. Well, Justice Ginsburg, we don't we agree that there's no civil liability for human rights offenses. The answer to Justice Alito's question at the beginning, is there any other nation in the world that provides for civil liability for human rights violations, the answer is no. There is no other nation in the world that provides for ATMs. But that's for individuals as well as for corporations. That's correct. But for human rights violations. Alito, is there an article 3 source of jurisdiction for a lawsuit like this? None other than the ATS, Your Honor. If there is a lawsuit like this, where an alien is suing an alien. Well, there's no alien diversity jurisdiction, so because an alien is suing an alien. And there's a good argument you could dispose of this case, but not all the other cases, by simply holding there's no alien diversity jurisdiction here and the ATS can't have been viewed as displacing Congress's intent to limit jurisdiction at the time. That would dispose of this case and other cases involving foreign corporations sued by foreign plaintiffs, cases like Talisman and Nestle and Rio Tinto. But we respectfully urge you to reach a broader ruling, which is that corporate liability is foreclosed, both by the uniform practice, the uniform practice, not just adjudications of the nations of the world. Now you're getting one additional thing, that the corporate rule that you're about to cite shows that many people believe there shouldn't be a remedy against a corporation because they're not moral persons. Why does it show that the corporation couldn't violate the substantive rule? Please. Your Honor, we do not urge a rule of corporate impunity here. Corporate officers are liable for human rights violations and for those they direct among their employees. There can also be suits under State law or the domestic laws of nations, but there may not be ATS, Federal common law, causes of action against corporations. Thank you, Your Honor. Roberts. Mr. Hoffman, you have 5 minutes remaining. Thank you. Let me just make a few quick comments. Sotomayor For all the reasons Justice Kagan mentioned, that the TVPA is not a limiting source and can be viewed as a supplemental source, but there does appear to be a little bit of incongruity that aliens can sue corporations for acts against other aliens, but American citizens under the TVPA might not be able to sue corporations. How do we deal with that angle? Well, there are a number of differences between the TVPA and the Alien Tort Statute apart from that. I mean, for example, the Alien Tort Statute applies to a much broader range of international human rights violations. Congress decided to legislate in those areas for the reasons that it decided to do that. The one thing that's clear, as Justice Kagan said, is that the Torture Victim Protection Act was designed to establish or to make even stronger the Philardega precedent and shield it from analyses that challenged its bases, and was not intended to restrict the Alien Tort Statute in any way. And obviously, the next case we'll discuss in greater detail, whether the TVPA applies to corporations or not. If I can just make a couple of additional points. If it was true that international law barred corporate liability, then our friends, the United Kingdom and the Netherlands, have violated international law by passing legislation that imposes criminal liability on corporations for violating genocide, crimes against humanity, and war crimes. And I think that brief makes it pretty clear that whatever they're saying, if the Alien Tort Statute is a domestic enforcement of international law, then their views don't apply. And this is a tort statute. That's what the ‑‑ there was a meaning to tort. Skinner's case, for example, was a tort not only under English common law, it was a tort in violation of the law of nations. It was robbery on the sea. The law of nations was incorporated in English common law, just as it was in the founding in our country. And under the Peque de Havana, still part of our land, the law of our land. Tort meant to the Founders, tort remedies. It meant that the means of enforcement would be done by the common law. That's all that was available then, it's all that's available now. And international law places no restriction on the way domestic jurisdictions enforce international law. There is a general principle law of corporate civil liability for all of the things that we allege in this case. In every legal system in the world, one can get redressed for this kind of thing. Countries don't necessarily call it a violation of the law of nations. They didn't fashion the statute the way our Founders did for the reasons that they did. But— Roberts. In every nation in the world, you can get redressed for this sort of thing. But I thought you told us earlier there was no place where this suit could be brought. In other words, a suit by an alien against another alien for conduct that takes place overseas. Well, what I'm suggesting — I don't know whether in every domestic jurisdiction the extraterritoriality issue is taken in the same way. What I'm suggesting is that for these kinds of acts, you can get redressed against the corporation within every legal system. Now, not every legal system, I don't know every legal system with respect to the extraterritoriality issue. But that just gets back to your basic submission, which is you define the international norm based on the act rather than the entire issue that's going to be litigated, which includes both remedy and the actor. Well, what we would suggest is that international law does not distinguish with respect to actor, at least with respect to these four norms, if we're going on a norm-by-norm basis. These norms are defined in ways that human beings and corporations can violate. Scalia, what's your position on aiding and abetting? Is that a matter of our domestic law, or would we try international law on that? The lower courts have treated it in different ways. I think that most of the courts now have found that aiding and abetting is a condition. What about the courts?  What's your position on aiding and abetting? I think that aiding and abetting could be viewed as a conduct-regulating norm, that it actually applies to the things that can be done to violate the norm, and therefore international law would apply to that. I think my time is up. Thank you, counsel. The case is submitted.